PETITION OF HENRY BULL and MARTHA S. COZZENS *et al.* for an Opinion of the Court.

A. mortgaged an estate, reserving the right to release certain easements over an adjoining strip of land which had been created by a predecessor in title. The mortgage contained powers of sale, authorizing the mortgagee or his assignee to sell for condition broken, and to convey the mortgaged estate absolutely and in fee simple to the purchaser. The assignee of the mortgagee sold and conveyed under the powers.

*Held*, that the purchaser was entitled to the estate with the easements over the adjoining strip.

*Held*, further, that A.'s reserved right to release the easements was extinguished by the sale.

*Held*, further, that a release given by A. after the sale was void.

A. during his occupancy of the estate as owner was also tenant of the adjoining strip.

*Held*, that during A.'s possession of both dominant and servient estates the easements were temporarily suspended.

CASE STATED for an opinion of the court under Pub. Stat. R. I. cap. 192, § 23.

Henry Bull owns an estate on Thames Street, in Newport, known as the Engs estate, and Martha S. Cozzens *et al.* own the the next estate on the north, known as the Gould estate. A strip of land eleven feet in width separates the estates. In A. D. 1799, William Vernon, who then owned both estates, conveyed the former to William Engs, Jun., and in his deed covenanted " for myself, my heirs and assigns, to and with the said William Engs, Jun., his heirs and assigns, that no edifice or other obstruction of light shall ever be erected on the north side of said dwelling-house to the distance of eleven feet, extending northerly from said dwelling-house as it now stands, and that the said William Engs, Jun., his heirs and assigns, shall have free egress and regress to the north side of said dwelling-house for the purpose of repairing the same, and that the clapboarding of said north side of said dwelling-house shall not be damaged by piling wood or any other thing against it, nor shall the spout for catching rain-water be damaged or disturbed or removed, excepting by the said William Engs, Jun., or his heirs or assigns; and it shall be at the option of said William Engs, Jun., to maintain the spout or to let the water drop from the eaves of said north side." The dwelling-house spoken of stood on the Engs estate, along the south side of the eleven foot strip.

In A. D. 1870 William C. Cozzens, George Cozzens, and Henry W. Cozzens, then tenants of the Gould estate, purchased the Engs estate and mortgaged the latter by a deed of mortgage, which conveyed the premises " with all the rights and easements," and contained the reservation : " It is understood, however, that these grantors are at liberty to release to the heirs of Isaac Gould any restriction in former deeds against erecting any edifice or obstruction of light within eleven feet of the north side of a portion of the buildings, and also providing that the jet on the north side of

said building is continued only by consent of said heirs, without prejudice to the land covered by said projection other than specified in this deed : " and also contained a power of sale, which authorized the mortgagee, his executors, administrators, or assigns, to sell . . . and in his or their own names, or as the attorney of the grantor . . . to " convey the same absolutely and in fee simple to the purchaser or purchasers accordingly."

Under the powers in the mortgage deed, and after condition broken, the assignee of the mortgagee in A. D. 1877 sold and conveyed the mortgaged premises to Henry Bull. Meanwhile the mortgagors occupied both estates, and put up a building on the eleven-foot strip.

William C. Cozzens died in December, A. D. 1876.

In A. D. 1884, George Cozzens, Henry W. Cozzens, and the heirs and administrator of William C. Cozzens executed to the heirs of Isaac Gould, and their successors in title to the Gould estate, a release of all restrictions on building or obstructing the eleven-foot strip.

This case was submitted to ascertain whether, after Bull's demand that the obstructions on the strip should be removed, the owners of the Gould estate could maintain them.

Newport, May 21, 1887. DURFEE, C. J. Our opinion is that the power reserved to the grantors in the mortgage deed, mentioned in the case stated, if it did not sooner determine by the death of one of the grantors, was extinguished by the sale for breach of condition. The deed conveyed not only the lot described, but also, together with it, " all the rights and easements," and therefore conveyed " the rights and easements " attached to the lot by the covenant given by William Vernon in his deed of 1799. The premises, however, were mortgaged, subject to the power reserved, and, we are inclined to think, continued subject to that power so long as the mortgage was outstanding, unless the power became extinct by the death of one of the grantors. But the mortgage was not only subject to the power reserved to the grantors; it was also coupled with a power given by the grantors to the mortgagee or his executors, administrators, or assigns. The latter power authorized the mortgagee, his executors, administrators, or assigns, on breach of condition, to sell the mortgaged premises and

" convey the same *absolutely* and in fee simple to the purchaser." The power covers the rights and easements appurtenant to the lot, as well as the lot itself. It was executed before any attempt was made to execute the power reserved. It is well settled that a conveyance under such a power is the conveyance, not only of the mortgagee or assignee executing it, but also, and even more properly, the conveyance of the mortgagor himself. 4 Kent Comment. *327 ; 2 Jones on Mortgages, § 1897 ; *Woonsocket Instit. for Savings* v. *Amer. Worsted Co.* 13 R. I. 255. The conveyance under the power, therefore, may be treated as if the mortgagors themselves had made it directly to the purchaser, and had paid off the mortgage out of the purchase-money, reserving the surplus to themselves. The question is, whether it would be competent for them, after doing so, to exercise the power reserved to them in the mortgage deed. We think that it clearly would not, since such an exercise of the power would be derogatory to their own grant. 1 Sugden on Powers, *56.

We are also of opinion that the building erected on the eleven-foot strip is an infringement of the rights, privileges, and easements secured to the Engs estate by the Vernon covenant of 1799, and that it is none the less an infringement because it was erected by the mortgagors, it having been erected after the mortgage, which was duly recorded. The power annexed to the mortgage was a power coupled with an interest, and it entitled the assignee of the mortgage to sell the estate, as it existed when it was given, discharged from any subsequent incumbrance or alienation created otherwise than by an exercise of the power reserved. 2 Jones on Mortgages, § 1654. The purchaser is therefore entitled to have the estate, with the rights and easements appurtenant to it, as they existed when the power of sale was given.

Moreover, we do not think that it could be inferred, even against the mortgagors themselves, if they were still the owners of the estate, from their use of the eleven-foot strip, that they had renounced their rights and easements in said strip ; for when they erected the structure across said strip they were in possession of both estates, using both together, so that neither was for the time being dominant and neither servient, the easements and servitudes appertaining to them being temporarily suspended. Washburn on Easements and Servitudes, *517.

Our decision is that Henry Bull, purchaser under the power of sale, is entitled to have the structure now built across the eleven-foot strip removed, and that it will be the duty of the owners of said strip to remove it when requested to do so by said Bull.